**INTERNAL REVENUE SERVICE,**
**Appellant,**

v.

**Wesley Wanner NORTON, Debtor,**
**Appellee.**

**Civ. A. No. J–81–3043.**
**Bankruptcy No. 77–01054G.**

United States District Court,
D. Maryland.

March 8, 1982.

---

1. *Firestone Tire & Rubber Company v. Risjord,* 449 U.S. 368, at 376, 101 S.Ct. 669 at 675, 66 L.Ed.2d 571 (1980).

J. Frederick Motz, U. S. Atty., and Michael J. Travieso, Asst. U. S. Atty., Baltimore, Md., Judith A. Levinthal, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Michael D. Jackley, Shelly E. Mintz, Baskin & Sears, Hyattsville, Md., for appellee.

## MEMORANDUM OPINION

SHIRLEY B. JONES, District Judge.

A novel question concerning the interpretation of the word "tax" in the discharge provisions of Section 17 of the Bankruptcy Act of 1966, 11 U.S.C. § 35 (1976), is presented in this bankruptcy appeal. The Bankruptcy Court held that an assessment against a defaulting IRS employee made under 26 U.S.C. § 7803(c) was not an exempt tax and accordingly enjoined collection. The Government filed a timely appeal. Briefing has been completed, and oral argument is not deemed necessary. This opinion is based on the record provided, the lower court decision and the briefs submitted.

The pertinent facts are undisputed. Wesley Wanner Norton is a former IRS employee. He was convicted in the U.S. District Court for the District of Columbia in 1975 of embezzling tax monies collected from taxpayers in the course of his employment and converting them to his own use. On April 26, 1976 the IRS made an assessment against Norton under 26 U.S.C. § 7803(c) in the amount of $14,845.74 for funds collected but not paid to the Government, and on May 31, 1976 made an assessment for personal income taxes owed with respect to those funds in the amount of $4,302.01.

Norton filed a petition for bankruptcy on August 23, 1977, listing the income taxes on Schedule A and the amount assessed under 26 U.S.C. § 7803(c) in Schedule A–3 as an unsecured, non-priority debt. The Bankruptcy Court set January 7, 1978 as the deadline for filing of creditors' objections to discharge and complaints to determine dischargeability of debts. The IRS filed a proof of claim, listing both the income taxes and the § 7803(c) assessment, but filed no objection to discharge or complaint to determine the dischargeability of its debt. Norton's discharge in bankruptcy was issued on May 8, 1978.

On January 15, 1981 Norton filed a complaint for injunctive relief in the Bankruptcy Court, seeking to restrain the collection by the IRS of the § 7803 assessment, the IRS having commenced collection by attachment of Norton's bank accounts in August 1980. Norton filed, at the same time, a petition to reopen his closed bankruptcy case. The petition was granted and the complaint was heard as a related matter. Counsel for the Government filed no answer to the complaint, but appeared at a scheduled hearing on June 15, 1981. Argument was heard, and the Government's time to file a written response was extended to June 25, 1981. An answer was filed on June 29, 1981. The bankruptcy court on October 2, 1981, issued an order enjoining

collection of the assessment, holding that the amount of the assessment was not a non-dischargeable tax debt under the Bankruptcy Act; that because it was not, an injunction could be issued; and that Norton had met the requirements for injunctive relief.

The government appeals the substantive ruling and challenges the Bankruptcy Court's jurisdiction over the complaint under the AntiInjunction Act. The jurisdictional and substantive questions are intertwined. The AntiInjunction Act, 26 U.S.C. § 7421(a), provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person. . . ." Although there is a narrow exception to the broad language of the statute, see Bob Jones Univ. v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), which the Government asserts is not applicable here, the Government does not contend that the definition of "tax" in the AntiInjunction Act differs from that in the Bankruptcy Act. Rather, its position is that because the debt is a tax, injunctive relief is barred by 26 U.S.C. § 7421(a). The Bankruptcy Court has jurisdiction to determine its own jurisdiction. See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

Section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a),[1] provides that a discharge in bankruptcy releases a debtor from all provable debts except "taxes which became legally due and owing by the bankrupt to the United States. . . within three years preceding bankruptcy." Subsection (a)(1)(e) exempts "taxes . . . which the bankrupt has collected or withheld from others as required by the laws of the United States . . . but has not paid over." 11 U.S.C. § 35(a)(1)(e).

The subsection concerning assessments against defaulting revenue agents, 26 U.S.C. § 7803(c), is part of a section that authorizes employment of the number of persons deemed proper for administration and enforcement of the internal revenue laws, provides for designation of posts of duty of employees engaged in field work, and provides for assessment of monies collected by an IRS employee that are unaccounted for or not paid over. If an employee fails to account for or pay over monies collected in connection with internal revenue laws, the Secretary of the Treasury must issue notice and demand for payment. If the employee fails to pay, "the amount so demanded shall be deemed imposed upon such officer or employee and assessed upon the date of such notice and demand, and the provisions of chapter 64 and all other provisions of law relating to the collection of assessed taxes shall be applicable in respect of such amount." The IRS contends that because this provision authorizes direct assessment and collection in the same manner as collection of assessed taxes, an assessment under this subsection is a tax owed by the defaulting employee and is not dischargeable in bankruptcy. It further relies on 17(a)(1)(e) of the Bankruptcy Act, which includes within the definition of excepted taxes "taxes . . . which the bankrupt has collected or withheld from others as required by the laws of the United States . . . but has not paid over."

This Court has found, and the parties have cited, no case on point. Likewise, nothing has been found or cited in the legislative history of the 1966 Bankruptcy Act, in which the applicable section was enacted, addressing this situation.

The bankruptcy judge relied on In re Waller, 142 F. 883 (D.Md.1905). In that case the Court held that Wicomico County was not entitled to priority over other creditors on its claim against a county tax collector for monies collected but not paid over to the county. The statute in effect at the time gave priority to "all taxes legally due and owing by the bankrupt to the . . . county" and to "debts owing to any person who by the laws of the state or of the

---

1. At the time of Norton's discharge in bankruptcy, the Revised Bankruptcy Act of 1978 had not been enacted. Code references herein are to the former sections. Current exemptions are contained in 11 U.S.C.A. § 523.

United States is entitled to priority." *Id.* at 884 (quoting Bankrupt Act of July 1, 1898, § 64, 30 Stat. 563). The court first determined that the debt was not one for which the county was entitled to priority under Maryland law. *Id.* at 885–86. It then held that the claim was not for "taxes" under the 1898 Bankrupt Act, *id.* at 886–87. It noted that "the debt is not in any plain and natural sense 'taxes.' " *Id.* at 886. Rather, a tax had been imposed upon other individuals, and the debtor collected it, or became answerable for it. The court concluded, "[T]he claim of the county should be clear and obvious, and not based on a strained use of words forced out of their natural meaning." *Id.* at 886. The claim of the county in *Waller* had been reduced to a judgment, although that fact was not determinative. No special statutory assessment such as the one here was involved.

Every indication is that when Congress used the word "tax" in Section 17(a)(1) of the 1966 Bankruptcy Act, the common construction of that word was meant. Section 7803(c), although it authorizes imposition and collection of amounts owed by defaulting employees in the same manner as for taxes, nowhere refers to such amounts as taxes.[2] Moreover, it appears in a part of the Internal Revenue Code relating to administrative matters concerning employees. The fact that the monies Norton embezzled from the IRS were payments of third parties on their taxes, interest and penalties, does not change the character of the debt owed by Norton to the IRS. The question is whether he has become liable for them as taxes.

The history of § 7803(c) and its predecessors supports the contention that § 7803(c) is merely the latest collection tool afforded the IRS for monies due from defaulting employees. The provision first appeared in its present form as § 7803(d) in the 1954 Internal Revenue Code.[3] The House and Senate Committee reports simply indicate that 7803(d) represented no material changes from existing law. *See* [1954] U.S. Code Cong. & Ad.News 4587, 5272.

The section did, however, represent one significant change from prior tax code provisions. By making the provisions of chapter 64 applicable, Congress in 1954 apparently incorporated the tax lien provisions, §§ 6321–6325, of chapter 64. The prior sections on collection from defaulting collectors had provided for the filing of a writ of distress by the General Counsel for the Treasury Department, 26 U.S.C. § 3975 (1939), levy and sale of personal property, *id.* § 3976, and real property, *id.* § 3977. The 1939 Internal Revenue Code contained similar provisions for collection of unpaid taxes by distraint, *id.* §§ 3690–3697, 3700–3706, although the statutory protections afforded taxpayers were considerably greater than those afforded defaulting collectors.[4] Sections 3670–3680 of the 1939 Act contained the tax lien provisions; no similar provisions are contained in the sections concerning collection from defaulting collectors.

The brief statements in the 1954 legislative history of § 7803(d) indicate that no significant change was intended in the new provision. The prior statutory provisions are more clearly only collection measures. The 1954 version, by providing for assess-

---

2. The Government states in its brief that Norton's liability "arises under a section of the tax code which specifically states that the liability shall be collected in the same manner as '*other* assessed taxes.' " (Emphasis supplied). Appellant's Brief at 3. The Government's argument would have force if the statute contained the word "other," but it does not.

3. Until 1972, § 7803(c) was an authorization for the Secretary to require a bond of employees or to purchase fidelity bonds himself. In 1972 the bond requirement was abolished as to all federal employees previously covered.

Pub.L. 92–310, 86 Stat. 209. An amendment of 1976 designated the former subsection (d) as subsection (c) and changed the language from "Secretary or his designate" to "Secretary." Pub.L. 94–455, 90 Stat. 1833.

4. For example, the General Counsel was directed to issue a writ of distress upon being advised by the GAO that the collector was delinquent. *Id.* § 3975. Notice and demand for unpaid taxes were required for taxpayers, *id.* § 3655(a); distraint remedies could be used if the taxpayer failed to pay within 10 days of notice and demand, *id.* § 3690.

ment of the amount due and collection in the same manner as taxes, presents a closer question. Although the legislative history is sketchy with regard to subsection (d), the little guidance there is persuades this Court that Congress did not intend to change the nature of the assessment to a tax.

The Government's argument that Section 17(a)(1)(e) applies here must be rejected. That section provides that "taxes which became legally due and owing by the bankrupt to the United States," 11 U.S.C. § 35(a)(1), includes "taxes . . . which the bankrupt has collected or withheld from others as required by the laws of the United States . . . but has not paid over," *id.* § 35(a)(1)(e). The legislative history indicates that this section was added in response to the concern of the IRS that corporations and other businesses, and responsible officers or employees, not be allowed to evade their responsibility to pay income and other taxes withheld from employees by going into bankruptcy. *See United States v. Sotelo*, 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978); 1A *Collier on Bankruptcy* ¶ 17.14[6] (14th ed.). In *United States v. Sotelo*, 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978), the Supreme Court held that an individual, who had been a sole proprietor and later a corporate officer, was not discharged from his personal liability under 26 U.S.C. § 6672 to pay over withholding taxes. The Court relied on § 17(a)(1)(e) and its legislative history in reaching its decision. Although, as the Government argues, Norton's case is somewhat similar, nothing in the legislative history indicates that 17(a)(1)(e) was intended to apply to his situation.

Other provisions of the 1966 Bankruptcy Act support the conclusion reached. First, Section 17(a)(2) of the Act provides a means by which the debt to the Government could have been held nondischargeable if the IRS had acted promptly. Among the exceptions to discharge is the "fraud" exception, 11 U.S.C. § 35(a)(2), under which sums due by reason of the debtor's conversion may be exempted from discharge. See 1A *Collier on Bankruptcy* ¶ 17.16. If exemption is sought under (a)(2), the creditor must file a timely complaint to determine dischargeability with the Bankruptcy Court. *Id.* ¶ 17.16[6]. The Government simply did not do so.

A § 7803(c) assessment is somewhat analogous to an amount due as a statutory penalty or forfeiture. The penalty amount is not dischargeable but the amount of the pecuniary loss is. *See United States v. Sotelo*, 436 U.S. at 271 n. 4, 98 S.Ct. at 1798 n.4; 1A *Collier on Bankruptcy* ¶ 17.13. The fact that Congress made compensatory penalties dischargeable in bankruptcy indicates that not every kind of debt due the United States is afforded protection against discharge.

As noted initially, the jurisdictional question concerning the AntiInjunction Act is dependent upon the substantive issue. This Court has determined that Norton's debt was not a "tax" for purposes of the Bankruptcy Act. Injunctive relief was therefore not barred, and the Bankruptcy Court's finding that injunctive relief was appropriate has not been challenged on any other basis.

The October 2, 1981 order of the Bankruptcy Court is, accordingly, affirmed.